**OKLAHOMA STATE FAIR EXPO-SITION, Appellant,**

v.

**LIPPERT BROS., Inc.**
**Appellee.**

**No. 5458.**

United States Court of Appeals
Tenth Circuit.

April 12, 1957.

Sam C. Oliver, Oklahoma City, Okl., for appellant.

Leon Shipp, Oklahoma City, Okl., for appellee.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

MURRAH, Circuit Judge.

Appellee, Lippert Brothers, Inc., entered into a contract with the City of Oklahoma City for the construction of a grandstand in the new Fairgrounds in Oklahoma City. The contract called for the construction of offices underneath a portion of the grandstand, to be occupied by the appellant, Oklahoma State Fair Exposition, on a rental basis.

The Fair Exposition was not a party to the construction contract, but it was apparently anxious to occupy the offices while preparing for the oncoming fair. It accordingly entered into a letter agreement with Lippert, whereby Lippert agreed to accelerate the work on the office area to have it serviceably ready for occupancy on or about September 11, 1954. "In other words, we would make this area serviceable to you as quickly as possible but not later than the above mentioned date, and yet leave it so that the final touches can be put on, if necessary, after the fair. For and in consideration of the extra effort, and money required to do this, it is agreed that the State Fair Exposition will pay to Lippert Bros. the sum of five thousand dollars." The office area was not available for occupancy on September 11, 1954, and Lippert continued with the work until about September 17 or 18, when the Fair Exposition moved in. When the Exposition refused to pay the five thousand dollars, Lippert brought this action based on di-

versity of citizenship, to recover the same.

The Fair Exposition answered that time being the essence of the agreement, and since the offices were not available on September 11 in accordance with the contract, the Exposition was not liable. The trial court did not think that time was the essence of the contract, but if so, the Fair Exposition waived the breach by not declaring upon it until after the work was done, the offices occupied and demand for payment.

■ Under Oklahoma statutory law, time is never considered the essence of a contract unless expressly so provided. 15 O.S.A. § 174. But no particular form of expression is required if it appears from the provisions in the contract that time should be of the essence. Mitchell v. Probst, 52 Okl. 10, 152 P. 597; Green Duck Co. v. Patterson & Hoffman, 36 Okl. 392, 128 P. 703; The Fair Exposition argues that time was made the essence of the contract by the specific agreement to make the offices serviceably available as quickly as possible, but not later "than the above mentioned date."

■ The whole content of the contract does indicate that the parties intended that time should be the essence of the contract. Not being a party to the contract, the sole concern of the Fair Exposition was accelerated performance to enable it to occupy the offices on or before September 11. All parties knew and understood the underlying reason for the haste; and, the consideration agreed to be paid was for the extra effort and money required to make the offices available on or before the stipulated date. We have no difficulty concluding that time was clearly the essence of the contract, and all agree that the offices were not ready for occupancy on the agreed date.

■■ The question remains whether the Fair Exposition waived the breach by acquiescence in the continued performance. Under controlling Oklahoma law, a "party to a written contract who intends to assert a breach of terms thereof must act in such a reasonable manner as to inform the adverse party of the intended claim of such breach." Spurgin v. Bennett, Okl., 168 P.2d 134. And, it is generally held that "When work is to be done by a time certain, the employer, by allowing it to go on afterwards, thereby treating the contract as still in force, waives the materiality of time and can claim only such damages as he has sustained by reason of the delay." 12 Am. Jur., Contract, § 349, p. 913.

■ The Fair Exposition did not promptly declare a breach of the contract. Indeed, the Manager of the Fair testified that the matter of continuance under the contract was never discussed. On September 11, the contractor said, "well, we didn't get it ready", and the Fair Manager replied, "well, we sure can't use it that way." But the evidence shows without dispute that the contractor, with knowledge and acquiescence of the Fair Exposition, continued to exert extra effort and expense to complete the contract; and, that it was completed and the Fair moved into the quarters one week later on the 18th or 19th. While there was evidence of inconvenience to the Fair, no attempt was made to prove damages. And, there was evidence tending to show that most of the sum provided for in the contract was used in the acceleration of the work. In these circumstances, we cannot say that the trial court's finding of waiver and estoppel is clearly erroneous, and the judgment is

Affirmed.